Madam Clerk, please call the next case. 315-347, Express Casino, Empress Casino. Counsel, you may proceed. Please, the Court. Counsel, good morning, Your Honors. My name is Rachel Synan at Nell O'Connor Daniewicz. I represent the plaintiff appellant, the employer in this workers' compensation case, Empress Casino. Now, this case stems from a workplace accident on December 23, 2003. The case was tried before Arbitrator Falcioni in 2009 and 2011. Arbitrator Falcioni found Ms. Zedick permanently and totally disabled under Section 8F of the Act and also awarded TTD and medical benefits. This decision was affirmed by the commission and circuit court, which brings us here today. The primary issue on appeal that I'd like to address before the court is whether the commission decision finding Ms. Zedick permanently and totally disabled is against the manifest way of the evidence. Now, the manifest way of the evidence shows that Ms. Zedick was able to contribute to the workforce sufficient to justify the payment of wages without seriously endangering her health. Ms. Zedick was originally a waitress. In September of 2006, multiple doctors, multiple, the IME doctors, her own treating physicians, and FCE report all found that Ms. Zedick was able to return to work with restrictions. She did return to work in September of 2006 as a data entry associate working four hours a day. She was permitted to take breaks as needed. She was permitted to use the elevator to avoid taking the stairs. She was even given a handicap permit spot so that she didn't have to walk too far to her parking spot. And then as a result of that, didn't she allegedly end up spending half of her day on her back because of pain? She lasted about two months at that position and then reported that she was still having increased issues. There was numerous complaints. It was Ms. Zedick's understanding that Empress Casino was to provide her a bed in her office so that she could lay down. The elevators took too long. Her doctor, Dr. DePhillips, examined her after she'd worked there for a period of time and said, It's aggravating your condition. That's correct, Your Honor. So she worked for about two months. At that time, she did not report to her own treating physician. She didn't complain to her supervisors. It wasn't until about five months later that she then returned to Dr. DePhillips, and at her request, she was placed off work. Isn't your argument, doesn't it boil down to an argument that you believe the commission gave too much weight to her treating doctors and not to your examining doctors? I wouldn't say that this is an A or B situation, as Your Honor described earlier, but that this is the manifest way of the evidence, that there is. Well, that's what it boils down to is, I mean, no question, both of her primary treating physicians said she's medically unable to work. There were two treating physicians, Your Honor, Dr. DePhillips and then Dr. Patel, who didn't see her until I believe it was 2008, and he also made that finding. But he did not have the medical records, her FCE report. He didn't have the extensive background and knowledge that. I'm looking at page 12 of your brief. It says, quote, while Dr. Patel and Dr. DePhillips opined that Petitioner was unemployable, the commission failed to consider the opinions of Dr. Ganiem, Dr. Hodgson, and Dr. Knowlton. Correct. So, I mean, doesn't it just boil down to your argument is that you should have paid more attention to your doctors? And isn't that the function of the commission, to determine the credibility of the evidence and the weight to give medical opinion testimony? I would agree, Your Honor. However, I believe that the manifest weight of the evidence here does show an opposite conclusion. For that reason, the commission decision should be reversed and remanded for that. Further, once she was placed off work, again, Ms. Zedek was reevaluated again by the IME physicians in this case, and they maintained that she was able to work for her FCE report. So, in closing, I find that the manifest weight of the evidence, the plain indisputable weight of the evidence, the opinions of Dr. Ganiem, Hodgson, Knowlton, FCE report, the initial opinions of her treating physicians regarding her work status, the testimony that we presented of an employee from Empress Casino regarding the accommodations that were made, Ms. Zedek's own admissions regarding her efforts when she returned to work, all of that shows that she was able to work and make a contribution to the workforce. And for that reason, she cannot be found to be permanently and totally disabled under Section 8F. And for that, I request that this Court reverse and remand the commission decision. Thank you, counsel. Kelsey, you may respond. Good morning. May it please the Court. Counsel, my name is David Figlioli. I represent the Eppley, Rene, or Renetta Zedek in this case. It appears that the first three cases are similar and that it's a manifest weight day today. And you'd rather be on your side, obviously. I certainly, in comparison to a few of the other ones, I think I'm in a more favorable position in this. I won't reiterate the standard, but clearly, as Justice Hoffman outlined, the manifest weight standard is if there is some competent evidence in the record to support the commission's decision and determination, then the reviewing court cannot substitute its interpretation. Briefly, what's that competent evidence? I think competent evidence in this particular case would be the medical opinions of the physicians. There's certainly competent evidence that can be opinions from IME physicians. It can be in if odd lot permanent total was an issue and dispute in this case, and I'll get to that. Certainly testimony from vocational experts would be competent evidence to resolve the dispute. This is not a non-law case. This is a medical department. So let's not go there. Right. Absolutely clear. And the doctor, she got the petition of herself testifying that she can't work. She's got to spend, as I recall, at least half a day laying down to relieve her pain, right? That's absolutely correct. So that's what you're relying on, and that's it. I am. I am. And I believe that the treating physicians, Dr. DePhillips and Dr. Patel, are in the more appropriate position to render opinions with respect to Renee Zedek's condition. Again, and I would point out to you that the commission also, I believe, to some extent. More appropriate than what? They're in the more appropriate. Given greater weight than the opinions of the evaluating physicians, Dr. Patel and Dr. DePhillips. Is that your point? Yes, because they're more familiar with the injured worker, in this case Renee Zedek. My understanding is that DePhillips' theory was because of the nature of your client's fusion, that workplaces undo stress on the disc, and therefore she cannot work. That is correct. When she returned to work in late 2006 for a few months, she complained of increasing symptoms. Dr. DePhillips ordered a new MRI, which is a diagnostic test, so it takes out completely any subjective issues, and he compared that new MRI with the old MRI. He noted that there was advancing degenerative changes, interestingly enough, in the level immediately above the fusion. The fusion was at L5S1. He noted these degenerative changes occurring at L4, L5 level. At that time, he took her off to work and said, if your condition worsens, you're going to be a candidate to extend that fusion, referred her to Dr. Patel. Dr. Patel began treating her with various modalities, was able to at least stabilize, I wouldn't say MMI, but stabilize the condition. And then he issues an opinion stating that if she tries to increase her activity, whether it be at work or otherwise, there's a possibility that we'll have to increase her medications, narcotics, modalities. This certainly could endanger her health, and then offers this opinion in a letter that she's permanently totally disabled. Again, I agree. There's three ways, as this Court points out and the Supreme Court points out, three ways to determine permanent total disability. One is by a preponderance of the medical evidence. That's first. Well, what do we have here? And we have the very first one, by a preponderance. I don't need any treatise on it. But that's what the issue is here. That is correct. With the issues of TTD and medical expenses, again, manifest weight question, and I think there's more than enough evidence in the record to support the Commission's determination. Thank you. Thank you, counsel. Counsel, you may reply. I don't think I believe we have any. But thank you, counsel, for asking. Thank you both, counsel, for your arguments in this matter. It will be taken under advisement, and a written disposition shall issue.